RLG/CAT                                                                                              269-3-31-74

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AL KANATER, S.A.L., a Lebanese Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| CEDAR GARDENS IMPORT & EXPORT, INC. ) | |
| a Michigan Corporation, ) | JURY DEMAND |
| ) | |
| Defendant. ) | |
| _____ ) | |

## **COMPLAINT AT LAW**

NOW COMES Plaintiff, AL KANATER, S.A.L., by and through its attorneys, KOPON AIRDO, LLC, and for its Complaint at Law against Defendant, CEDAR GARDENS IMPORT & EXPORT, INC., hereby alleges as follows:

### PARTIES

1. Plaintiff, AL KANATER, S.A.L., ("AL KANATER"), is a Lebanese Corporation, with its principal place of business located at 69 Mansourieh el Metn, Mkalles, Beirut, Lebanon, and which does business in Illinois and throughout the United States.

2. Defendant, CEDAR GARDENS IMPORT & EXPORT, INC. ("CEDAR GARDENS"), is a Michigan corporation with its principal place of business located at 36175 Herman St, Romulus, MI 48174, and doing business in Illinois, and throughout the United States.

### JURISDICTION AND VENUE

3. This is an action for trademark infringement, trade dress infringement, and dilution under the Trademark Act of 1946 15 U.S.C. § 1051 *et seq.* (The Lanham Act), and for

1

common law trademark infringement, trade dress infringement, dilution, unfair competition, unjust enrichment and deceptive trade practices under Illinois law.

4. This Court has jurisdiction over the subject matter of the action under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), and has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state law claims.

5. This Court also has jurisdiction of this action pursuant to 28 USC §1332 on the basis of diversity of citizenship in that the Plaintiff is a Lebanese Corporation, and Defendant is a Michigan corporation, and the amount in controversy exceeds $75,000.00.

6. Venue is appropriate in this District and Division on the bases that the Defendant conducts business in this District and Division, and the events and omissions giving rise to these causes of action occurred in this District and Division.

## GENERAL ALLEGATIONS

7. AL KANATER has been in the food production, manufacturing and distribution industry since the 1970's and has been selling its goods in the United States since the early 1980's. It is known in the international marketplace for its premium quality tahini and halva, and is an industry leader in these products.

8. Since 1984, AL KANATER has exclusively and continuously used the highly distinctive, and unique word trademark Al Kanater®, along with the design trademark containing the text Al Kanater® within an image of a stone bridge containing arches (hereinafter referred to as the "Al Kanater Bridge Mark"), in connection with its sale of tahini and halva in the commerce of the United States, and more particularly within the Chicago-land area within the geographic boundaries of the United States District Court for the Northern District of Illinois.

2

9. Based on its U.S. Trademark Registration, AL KANATER has ownership and priority in the Al Kanater® word mark, Registration Nos. 2624298, issued on September 24, 2002, as well as the Al Kanater Bridge Mark, Registration Nos. 2634260, issued October 15, 2002, both under the class of processed beans, jams, processed edible seeds, pickles, flavoring syrups, and candy, with dates of first use at least as early as July 7, 1977, and their first use in U.S. commerce in December of 1984.

10. A true and correct copy of the trademark registration certificate for the Al Kanater Bridge Mark is attached hereto as Exhibit "A".

11. AL KANATER has used the Al Kanater Bridge Mark in conjunction with a variety of label variants and products, all of which are exclusive to AL KANATER, and which label variants have not been licensed for use by any other corporation or business entity within the United States or other jurisdiction, except for the limited license to advertise and use the exact label configuration in conjunction with the sale and offer for sale of the AL KANATER products.

12. AL KANATER has exclusively licensed and controlled all use of the Al Kanater Bridge Mark, including controlling the packaging, source, content, quality and distribution of its distinctive AL KANATER Tahini, and AL KANATER holds the entire right title and interest to the Al Kanater Bridge Mark.

13. Additionally, since approximately 1980, AL KANATER has used specific trade dress for its Tahini packaging, which consists of a white plastic cylindrical container, and moving from the top of the container to the bottom, containing the following design elements: an orange plastic top, the Al Kanater Bridge Mark in dark blue; dark blue text in all capital letters that reads "TAHINA EXTRAS"; dark blue text that reads "100% GROUND SESAME SEEDS";

orange text containing the weight of the container; an orange rectangular banner with white text with the company name AL KANATER; followed lastly by orange text containing the company contact information on the very bottom. On the side of the container, the nutritional information is printed in dark blue text, and there is an informational paragraph about the product printed in orange text.

14. A true and correct photographic representation of the AL KANATER Tahini bottle, containing the Al Kanater Bridge Mark and above-referenced trade dress, is attached hereto as Exhibit "B".

15. Since its date of first use of the Al Kanater Bridge Mark, AL KANATER has not licensed the use of the Al Kanater Bridge Mark, or the trade dress for its Tahini, to any corporation or business entity in the State of Illinois or in any other state except for the limited license to sell the product given to AL KANATER distributors and sales outlets using only the label with all trademark and trade dress that is approved by and issued by AL KANATER.

16. The Al Kanater Bridge Mark and associated labeling, trade dress and information on the label have been primarily associated with the best quality tahini, made without additives or other preservatives.

17. An average of over $250,000 has been spent in marketing AL KANATER Tahini by AL KANATER, per year, in the most recent year for which such figures are available.

18. Advertisements for the AL KANATER Tahini have appeared in store fliers nationwide, and in a variety of other advertising media distributed throughout the Chicago-land area, the Midwest and nationwide.

19. The Al Kanater Bridge Mark and trade dress of its Tahini packaging are inherently distinctive and have become famous and known to the public due to AL KANATER's

extensive advertising, its established position in the marketplace from several decades of sales and marketing efforts and its goodwill, and due to the high quality of the tahini marketed under the Al Kanater Bridge Mark and trade dress.

20. In addition to the trademark registration, substantial common law rights exist for Al Kanater Bridge Mark, as well as its distinctive and famous trade dress and label design of AL KANATER's Tahini.

### A. Cedar Garden's Infringement

21. In or around of 2017, AL KANATER discovered that CEDAR GARDENS was selling AL KANATER Tahini on its website, along with other tahini brands. Accordingly, CEDAR GARDENS had knowledge of the AL KANATER Tahini, the distinctive and famous Al Kanater Bridge Mark and trade dress and packaging design used to identify AL KANATER's Tahini.

22. With knowledge of Al Kanater's Bridge Mark and distinctive trade dress for its AL KANATER Tahini, and with knowledge of AL KANATER's goodwill in the marketplace, CEDAR GARDENS intentionally and willfully designed and packaged its own brand-name tahini, which is an inferior product that does not maintain the same quality standard as AL KANATER Tahini, using a confusingly similar design bridge mark, consisting of an image of an identically-colored dark blue stone bridge with an arch (hereafter referred to as the "Infringing Bridge Mark"), and a near-identical design and color combination for its packaging.

23. CEDAR GARDEN's infringing trade dress and packaging for its Tahini consists of an identically-shaped plastic cylindrical white container with the following design elements, moving from the top of the container to the bottom: an identically-colored plastic orange top; identically-colored dark blue text with near-identical type font that reads in all capital letters

"TAHINA" in the same location on the container as the AL KANATER Tahini; orange text in near-identical type font that reads "100% Natural"; the Infringing Bridge Mark; orange text with the identical type font containing the weight of the container in the same location is as found on the AL KANATER Tahini container; an identically-colored and shaped rectangular orange banner containing white text with identical type font that reads the company name, "CEDAR GARDENS FOOD IMP. & EXP. INC"; followed lastly by orange text at the very bottom containing the company address. On the side of the CEDAR GARDEN's Tahini container, the nutritional information is similarly printed in an identically-colored dark blue text, and there is an informational paragraph about the product printed in an identically-colored orange text. (The overall design elements of CEDAR GARDEN'S Tahini packaging are hereinafter referred to as the "Infringing Trade Dress").

24. A true and correct photographic representation of the bottle of CEDAR GARDEN's Tahini containing the Infringing Bridge Mark and Infringing Trade Dress is attached hereto as Exhibit "C".

25. On or about November of 2017, AL KANATER discovered that there were quantities of the CEDAR GARDEN Tahini bearing the confusingly similar Infringing Bridge Mark and Infringing Trade Dress being marketed in the Chicago land area, being offered for sale at the following locations: Pete's Fresh Market, 10280 S. Harlem Ave., Bridgeview, IL 60455, and other various locations of Pete's Fresh Market, Al Nour Super Market, 16213 94th Ave., Orland Hills, IL 60487, and Pyramid Supermarket, 14259 Wolf Rd., Orland Park, IL 60467.

26. Upon information and belief, CEDAR GARDENS marketed its Tahini bearing the Infringing Bridge Mark and Infringing Trade Dress on its website and through other promotional materials.

27. On or around November 20, 2017, AL KANATER, through its legal counsel, sent a Cease and Desist letter to CEDAR GARDENS, informing it of its infringement of the Al Kanater Bridge mark and the trade dress of its Tahini, and demanding that it cease and desist its use of the Infringing Bridge Mark and Infringing Trade Dress, remove the products bearing the Infringing Bridge Mark and Infringing Trade Dress from its website and other promotional materials, recall all products bearing the Infringing Bridge Mark and Infringing Trade Dress, and to provide an accounting of the revenues generated from its sale of the Cedar Gardens Tahini bearing the Infringing Bridge Mark and Infringing Trade Dress.

28. CEDAR GARDENS refused these requests and, upon information and belief, is still distributing CEDAR GARDENS Tahini bearing the Infringing Bridge Mark and Infringing Trade Dress in Illinois and throughout the United States, and the CEDAR GARDEN Tahini sold by CEDAR GARDENS bearing the Infringing Bridge Mark and Infringing Trade Dress, is still being sold by third-party vendors throughout Illinois.

29. At no time in the past, nor at any time reasonably contemplated in the future, did AL KANATER allow or grant any license to CEDAR GARDENS, or any other any business or corporate entity, to use Al Kanater Bridge Mark, or its trade dress or design elements found on the bottles of AL KANATER's Tahini.

30. AL KANATER strictly controls all aspects of manufacture, design, packaging and sale of its products that are sold or distributed under its valuable trademarks and trade dress, and has made no agreement with any entity, particularly CEDAR GARDENS, for any use of its marks or trade dress.

31. CEDAR GARDEN's use of the Infringing Bridge Mark and Infringing Trade Dress in the manner described above is likely to cause, and has already caused, confusion,

mistake and has deceived customers, and is likely to deceive potential customers, of the parties as to the affiliation, connection, or association of CEDAR GARDENS and AL KANATER, and as to the origin, sponsorship, affiliation or approval of the goods marketed and distributed by CEDAR GARDENS.

32. CEDAR GARDEN's use of the Infringing Bridge Mark and Infringing Trade Dress in the manner described above has caused dilution of the distinctive quality of the Al Kanater Bridge Mark and trade dress for its Tahini.

33. CEDAR GARDEN's use of the Infringing Bridge Mark and Infringing Trade Dress in the manner described above, falsely indicated to the purchasing public that the goods manufactured, packaged and distributed by CEDAR GARDENS originated from, or were sponsored by, or affiliated with, AL KANATER.

34. CEDAR GARDEN's use of the Infringing Bridge Mark and Infringing Trade Dress in the manner described above enabled CEDAR GARDENS to receive the benefit of the goodwill in the trademark and trade dress owned by AL KANATER, which AL KANATER has built up at great labor and expense over many years.

35. CEDAR GARDEN's use of the Infringing Bridge Mark and Infringing Trade Dress in the manner described above unjustly enriched CEDAR GARDENS, at AL KANATER's expense, and enables CEDAR GARDENS to gain acceptance for their goods, not solely on their own merits, but on the reputation and goodwill of AL KANATER and the Al Kanater Bridge Mark and trade dress.

36. The use of the Infringing Bridge Mark and Infringing Trade Dress by CEDAR GARDENS in the manner described above removed from AL KANATER the ability to control the nature and quality of products provided under those marks and places the valuable reputation

and goodwill of AL KANATER in the hands of CEDAR GARDENS, over whom AL KANATER has no control.

37. The activities of CEDAR GARDENS have caused irreparable harm to AL KANATER and to the public. There is no adequate remedy at law for such injuries, as have been caused to AL KANATER.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

38. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

39. The acts of CEDAR GARDENS by its actions complained of herein, constitute trademark infringement of the Al Kanater Bridge Mark in violation of Section 43(a) of the Lanham Act, 15. U.S.C. § 1125(a).

40. CEDAR GARDEN's use of the Infringing Mark in the manner described above is likely to cause, and has already caused, confusion, mistake and has deceived customers, and is likely to deceive potential customers, of the parties as to the affiliation, connection, or association of CEDAR GARDENS and AL KANATER, and as to the origin, sponsorship, affiliation or approval of the goods marketed and distributed by CEDAR GARDENS.

41. As a result of CEDAR GARDEN's actions, AL KANATER has been damaged by the acts of CEDAR GARDENS in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT II: FEDERAL TRADE DRESS INFRINGEMENT

42. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

43. The acts of CEDAR GARDENS by its actions complained of herein, constitute trademark dress infringement of AL KANATER Tahini's associated trade dress, in violation of Section 43(a) of the Lanham Act, 15. U.S.C. § 1125(a).

44. CEDAR GARDEN's use of the Infringing Trade Dress in the manner described above is likely to cause, and has already caused, confusion, mistake and has deceived customers, and is likely to deceive potential customers, of the parties as to the affiliation, connection, or association of CEDAR GARDENS and AL KANATER, and as to the origin, sponsorship, affiliation or approval of the goods marketed and distributed by CEDAR GARDENS.

45. As a result of CEDAR GARDEN's actions, AL KANATER has been damaged by the acts of CEDAR GARDENS in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT III: FEDERAL DILUTION

46. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

47. The acts of CEDAR GARDENS as complained of herein, constitute dilution in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), as amended.

48. As a result of CEDAR GARDEN's actions, AL KANATER has been damaged by the acts of CEDAR GARDENS in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT IV: COMMON LAW TRADEMARK AND TRADE DRESS INFRINGEMENT

49. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

50. The acts of CEDAR GARDENS constitute a violation of the common law of the State of Illinois and other states where CEDAR GARDENS is conducting its activities.

51. The actions of CEDAR GARDENS have been conducted maliciously, deliberately, intentionally and with intent to deprive AL KANATER of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales from AL KANATER, with the intent to inflict injury on AL KANATER.

52. As a result of CEDAR GARDEN's actions, AL KANATER has been damaged by the acts of CEDAR GARDENS in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT V: DILUTION UNDER STATE LAW

53. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

54. The acts of CEDAR GARDENS as complained of herein, constitute dilution of AL KANATER' famous Bridge Mark in violation of the common law of the State of Illinois and other states where CEDAR GARDENS is conducting its activities.

55. The actions of CEDAR GARDENS have been conducted maliciously, deliberately, intentionally and with intent to deprive AL KANATER of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales from AL KANATER, with the intent to inflict serious injury on AL KANATER.

56. AL KANATER has been damaged by the acts of CEDAR GARDENS in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT VI: COMMON LAW UNFAIR COMPETITION

57. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

58. The acts of CEDAR GARDENS as complained of herein, constitute unfair competition in violation of the common law of the Stale of Illinois and other states where CEDAR GARDENS is conducting its activities.

59. The actions of CEDAR GARDENS have been conducted maliciously, deliberately, intentionally and with intent to deprive AL KANATER of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales from AL KANATER, with the intent to inflict serious injury on AL KANATER.

60. AL KANATER has been damaged by the acts of CEDAR GARDENS and those acting in concert with them in an amount currently unknown, but upon information and belief in an amount that exceeds $2 Million.

## COUNT VII: COMMON LAW PASSING OFF

61. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

62. The acts of CEDAR GARDENS as complained of herein, constitute passing off in violation of the common law of the state of Illinois and other states where CEDAR GARDENS is conducting its activities.

63. The actions of CEDAR GARDENS have been conducted maliciously, deliberately, intentionally and with intent to deprive AL KANATER of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales from AL KANATER, with the intent to inflict serious injury on AL KANATER.

64. As a result of CEDAR GARDEN's actions, AL KANATER has been damaged by the acts of CEDAR GARDENS in an amount currently unknown, but upon information and belief in an amount that exceeds $2 Million.

### COUNT VIII: DECEPTIVE TRADE PRACTICES UNDER THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT

65. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

66. The acts of CEDAR GARDENS constitute deceptive trade practices that constitute passing off and creating a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods in violation of the common law of the State of Illinois and other states where CEDAR GARDENS is conducting its activities and in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

67. The actions of CEDAR GARDENS have been conducted maliciously, deliberately, intentionally and with intent to deprive AL KANATER of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales from AL KANATER, with the intent to inflict serious injury on AL KANATER.

68. As a result of CEDAR GARDEN's actions, AL KANATER has been damaged by the acts of CEDAR GARDENS, and those acting in concert with them, in an amount currently unknown, but upon information and belief in an amount that exceeds $2 Million.

### COUNT IX: UNJUST ENRICHMENT

69. AL KANATER hereby incorporates paragraphs 1-37 of the General Allegations above as though fully alleged herein.

70. The acts of CEDAR GARDENS constitute unjust enrichment of CEDAR GARDENS at the expense of AL KANATER.

71. The actions of CEDAR GARDENS have been conducted maliciously, deliberately, intentionally and with intent to deprive AL KANATER of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales from AL KANATER, with the intent to inflict serious injury on AL KANATER.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, AL KANATER requests a jury trial of all issues that may be tried to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, AL KANATER prays for an Order and Judgment as follows:

1. Entry of an order on a preliminary and permanent basis requiring that CEDAR GARDENS and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined from:

 (a) Using in any manner the Infringing Bridge Mark and/or Infringing Trade Dress, or any name, mark or trade dress that wholly incorporates the Al Kanater Bridge Mark or trade dress or is confusingly similar to said marks and/or trade dress;

 (b) Using or displaying the Infringing Bridge Mark and/or Infringing Trade Dress on any websites, products, or promotional materials in any false and/or deceptive manner;

 (c) Doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or prospective customers of AL KANATER's products as to the source of the products or services offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into

    believing that there is some connection between AL KANATER and CEDAR GARDENS;

(d) Committing any acts which will tarnish, blur, or dilute, or are likely to tarnish, blur, or dilute the distinctive quality of the famous Infringing Bridge Mark and/or Infringing Trade Dress;

(e) Making any representations, express or implied, that AL KANATER is affiliated with or sponsors or approves of CEDAR GARDEN's Tahini or its products;

2. Entry of an order of preliminary and permanent injunction, requiring CEDAR GARDENS to recall all products currently in the marketplace bearing the Infringing Bridge Mark and/or Infringing Trade Dress;

3. Ordering CEDAR GARDENS to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all products, labels, marketing and promotional materials, or any or other items in the possession, custody, or control of CEDAR GARDENS or its agents bearing the Infringing Bridge Mark and/or Infringing Trade Dress, or any other products bearing marks or trade dress that are confusingly similar to the Al Kanater Bridge Mark and its Tahini trade dress;

4. Ordering CEDAR GARDENS to provide an accounting of profits made from its sale of products bearing the Infringing Bridge Mark and/or Infringing Trade Dress;

5. Ordering CEDAR GARDENS s, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon AL KANATER within thirty (30) days after entry of the injunction, a written report under oath describing in detail the manner and form in which CEDAR GARDENS has complied with the injunction, including recalling all products bearing the Infringing Bridge Mark and/or Infringing Trade Dress from the marketplace;

6. Ordering Defendant to pay a judgment in the amount of AL KANATER's actual damages under 15 U.S.C. § 1117 and Illinois law, as well as CEDAR GARDEN's profits, and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117, in a amount that, on information and belief, exceeds $2 Million;

7. Ordering CEDAR GARDEN to pay AL KANATER's reasonable attorneys fees and costs of this action under 15 U.S.C. § 1117 and/or Illinois law; and

8. Granting AL KANATER all such other and further relief as the Court deems just and proper.

                                    Respectfully Submitted,

                                    KOPON AIRDO, LLC

                                    By: /s/ Ryan L. Greely
                                         One of its Attorneys

Ryan L. Greely (IL Bar No. 6294279)
KOPON AIRDO, LLC
233 South Wacker Drive
Suite 4450
Chicago, IL 60606
312/506-4450
312/506-4460 FAX